AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

Southern **DISTRICT OF** California

FILED 2008 AUG -1 PM 12:13
CLERK US DIST
SOUTHERN DISTRICT
BY_____ DEPUTY

'08 MJ 2386

| In the Matter of the Search of<br>(Name, address or brief description of person or property to<br>Express Mail parcel EH 269777466 US addressed to Tony Walker, 7448 Fenner Street, 1, Norfolk, VA 23505 from Terrance Walker, 5803 Winchester Street, San Diego, CA 92139. | **APPLICATION AND AFFIDAVIT**<br><br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: |
|---|---|

I, Kim A. Kelly being duly sworn depose and say:

I am a(n) U. S. Postal Inspector and have reason to believe
Official Title

that on the premises known as (name, description and/or location)

Express Mail parcel EH 269777466 US addressed to Tony Walker, 7448 Fenner Street, 1, Norfolk, VA 23505 from Terrance Walker, 5803 Winchester Street, San Diego, CA 92139 which is in the custody of the U. S. Postal Inspection Service.

in the Southern District of California
there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof.    X Yes    ___ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

7/29/08
Date

at    San Diego, CA
      City and State

_____
U.S. Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Kim Kelly, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating crimes against the U.S. Postal Service and the use of the mail including violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following: Express Mail parcel Express Mail parcel EH 269777466 US addressed to Tony Walker, 7448 Fenner Street, 1, Norfolk, VA 23505 from Terrance Walker, 5803 Winchester Street, San Diego, CA 92139.

3. I have been a federal agent for 18 years and employed as a Postal Inspector since July 2007. From Sep 87-93, while employed with the Naval Criminal Investigative Service, I was assigned to investigate narcotics violations.

4. In July 2007, I received specialized training from the U.S. Postal Inspection Service in the following two areas; Investigations involving the use of the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances; and investigations involving the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions.

5. Based upon my overall experience, specialized training and discussions with other Postal Inspectors and narcotics agents, I know the following in summary:

    a. Individuals who regularly handle controlled substances can leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances. My experience has shown that

1

occasionally a canine will not immediately alert to the presence of contraband or controlled substance. This may occur for a variety of reasons including the packaging and additional efforts by the sender to mask the scent of a controlled substance. Often the masking agent's scent weakens over time. As a result, a canine may not initially alert to a package they may alert to after a reasonable passage of time.

b.  The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

c.  Ongoing investigations have disclosed that Express (overnight) and Priority (two day) parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

d.  I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

e.  Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically Express Mail or Priority Mail, for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1.  Items sent via Express Mail or Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2.  Express Mail is usually requested to be delivered by the next day's mail.

3.  Priority Mail is usually requested to be delivered within two days of mailing.

4.  Dispatch times for Express Mail are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of Express Mail or Priority Mail is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of Express Mail or Priority Mail by United States Postal Service.

7. Express Mail and Priority Mail may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies, addresses in foreign countries, and legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names and residences other than their own to avoid suspicion and in an effort to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in

1 | shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

    j.    I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

6. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On July 28, 2008, during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) in San Diego, California, Postal Inspectors became aware of a suspicious Express Mail parcel that is the subject of this affidavit and retrieved it for further investigation.

8. Suspicion of the Express Mail parcel is based on the following facts: the label was handwritten as opposed to typewritten; although database checks determined the sender and recipient addresses are accurate addresses, neither the sender nor the recipient name are associated with either address; and the telephone number listed for the sender is a disconnected number.

9. On July 29, 2008, I met Detective Dan Billberry and his trained narcotic detection canine, Cajun, at the Midway Processing and Distribution Facility (P&DF) in San Diego, California. Detective Billberry and Cajun conducted an exterior inspection of the subject parcel. When Cajun examined the parcel described above, Detective Billberry advised that Cajun did alert to the presence of the

4

odor of controlled substances in the parcel. The qualifications of canine Cajun are contained in attachment A.

10. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcels as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

_____
Kim Kelly
Postal Inspector

Sworn to before me, and subscribed in my presence, on this 29th day of July, 2008.

_____
U.S. Magistrate Judge

5

## ATTACHMENT A
### For
### Daniel M. Billberry and K-9 Cajun

Daniel M. Billberry is currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer. Det. Billberry has been a police officer for over 21 years and has worked as a narcotic detection dog handler since June 2005. Det. Billberry is a member of the California Narcotic Canine Association and the California Narcotics Officers Association.

Detective Billberry has participated in over 200 arrests of persons for violations of controlled substance laws. Det. Billberry has in excess of 300 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA Narcotic Investigator Course, the 40 hour DEA Clandestine Laboratory Investigator Course, the 40 hour Drug Trafficker Interdiction Characteristics Course, the 40 hour DEA Operation Jetway Investigator Course and the 40 hour SkyNarc Criminal Interdiction Course. Det. Billberry has testified as an expert in the field of narcotics in state court. Det. Billberry is familiar with the manner in which said substances are packaged, marketed and consumed. Detective Billberry has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. Detective Billberry has worked in an undercover capacity in purchasing controlled substances.

1

From May 1999 to June 2005, Det. Billberry was assigned to the Narcotic Street Team. Det. Billberry was involved in over 200 cases either as the case agent or assisting detective. Detective Billberry has observed hundreds of persons involved in narcotic trafficking and has developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On June 4, 2005, Detective Billberry was assigned to the NTF Commercial Interdiction Team. Det. Billberry has been involved in over 150 parcel cases where he utilized surveillance techniques, profiles of persons and parcels and his narcotic detection canine. Det. Billberry has observed several hundred parcels during the course of his duties. On selected parcels, Det. Billberry has observed certain characteristics that although not illegal, when taken in their totality lead him to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment.

Det. Billberry has been able to confirm his suspicions by utilizing a narcotic detection canine to alert to packages. It has come to Det. Billberry's attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service and Federal Express security that the smugglers are utilizing extreme measures to shield the odor of the controlled substances from the canine.

In November 2007, Detective Billberry was assigned to train K9 "Cajun" in the area of narcotic detection. Detective Billberry and "Cajun" received approximately 20 hours of training and evaluation in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan. Steve Sloan is a certifying official for the California Narcotic Canine Association. Prior to Det. Billberry being assigned "Cajun", "Cajun" was originally trained and certified by a United States Border Patrol designated trainer as a narcotic detection canine where he was deployed with a Border Patrol Canine handler for approximately one year. "Cajun" was donated to the San Diego Police Department in November 2007, after his handler was promoted. "Cajun" was assigned to work with San Diego Police Detective, Daniel Billberry on this date.

On December 20, 2007, "Cajun" was certified as 100% proficient in the detection of Heroin, Cocaine, Marijuana and Methamphetamine by Steve Sloan who is a certifying official for the California Narcotic Canine Association.

Cajun's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Subsequent to Cajun's certification, Cajun has alerted 11 times where 11 search warrants have been obtained on his alerts. Cajun has alerted on several occasions where the controlled substances are seized when a warrant is not required because a warrant or consent has already been obtained.

3

Detective Billberry and "Cajun" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Detective Billberry, a properly trained narcotic detection canine will not alert to all currency. Det. Billberry has witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been Detective Det. Billberry's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Det. Billberry's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###

(06/03/08)

4